| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP | COOLEY LLP |
| LAUREN R. GOLDMAN (*pro hac vice*) | MICHAEL G. RHODES, SBN 116127 |
| lgoldman@gibsondunn.com | rhodesmg@cooley.com |
| DARCY C. HARRIS (*pro hac vice*) | KYLE C. WONG, SBN 224021 |
| dharris@gibsondunn.com | kwong@cooley.com |
| 200 Park Avenue | CAROLINE A. LEBEL, SBN 340067 |
| New York, NY 10166 | clebel@cooley.com |
| Telephone: (212) 351-4000 | 3 Embarcadero Center, 20th Floor |
| Facsimile: (212) 351-4035 | San Francisco, CA 94111-4004 |
| | Telephone: (415) 693-2000 |
| ELIZABETH K. MCCLOSKEY, SBN 268184 | Facsimile: (415) 693-2222 |
| emccloskey@gibsondunn.com | |
| ABIGAIL A. BARRERA, SBN 301746 | |
| abarrera@gibsondunn.com | |
| One Embarcadero Center, Suite 2600 | |
| San Francisco, CA 94111-3715 | |
| Telephone: (415) 393-8200 | |
| Facsimile: (415) 393-8306 | |

*Attorneys for Defendant Meta Platforms, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JUSTIN HUNT,<br><br>                *Plaintiff*,<br>    v.<br><br>META PLATFORMS, INC.; GOOGLE, LLC; HRB DIGITAL LLC; HRB TAX GROUP, INC.; and DOES 1 through 100 inclusive,<br><br>                *Defendants*. | Case No. 5:23-cv-04953-PCP<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, FOR A STAY**<br><br>Date: May 2, 2024<br>Time: 10:00 a.m.<br>Courtroom 8, 4th Floor<br><br>Action Filed: September 27, 2023<br>Honorable P. Casey Pitts |

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, on May 2, 2024, at 10:00 a.m., before the Honorable P. Casey Pitts of the United States District Court for the Northern District of California in the San Jose Courthouse, Courtroom 8, 280 South First Street, San Jose, CA 95113, Defendant Meta Platforms, Inc. ("Meta") will, and hereby does, submit its motion to compel arbitration or, in the alternative, for a stay.

The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof that follows; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

# STATEMENT OF ISSUES TO BE DECIDED

(1) If this Court compels arbitration of plaintiff's claims against H&R Block, should it also compel arbitration of plaintiff's claims against Meta under the doctrine of equitable estoppel?

(2) Alternatively, if this Court compels arbitration of plaintiff's claims against H&R Block but declines to compel arbitration of plaintiff's claims against Meta, should the claims against Meta be stayed pending resolution of the H&R Block arbitration?

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................1

BACKGROUND ............................................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.    If the Court Grants H&R Block's Motion to Compel Arbitration, It Should Also Compel Arbitration of Plaintiff's Claims Against Meta Under the Doctrine of Equitable Estoppel. .................................................................................2

        A.    Plaintiff's Claims Against Meta Are Intertwined with His Agreement with H&R Block. ...........................................................................................3

        B.    Plaintiff Alleges Interdependent and Concerted Misconduct by Meta and H&R Block That Is Founded in the Obligations of His Agreement with H&R Block. ...........................................................................................5

    II.    In the Alternative, the Court Should Stay Litigation of Plaintiff's Claims Against Meta Pending Arbitration of His Claims Against H&R Block. .....................7

CONCLUSION ...............................................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Apple iPhone 3G Prods. Liab. Litig.*,
   859 F. Supp. 2d 1084 (N.D. Cal. 2012) ................................................................................. 6

*Bischoff v. DirecTV, Inc.*,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) ................................................................................. 7

*Boucher v. All. Title Co.*,
   127 Cal. App. 4th 262 (2005) ............................................................................................... 4

*BrowserCam, Inc. v. Gomez, Inc.*,
   2009 WL 210513 (N.D. Cal. Jan. 27, 2009) ......................................................................... 7

*Cohen v. CBR Sys., Inc.*,
   625 F. Supp. 3d 997 (N.D. Cal. 2022) .................................................................................. 5

*Franklin v. Cmty. Reg'l Med. Ctr.*,
   998 F.3d 867 (9th Cir. 2021) ........................................................................................ 2, 4, 5

*Garcia v. Pexco, LLC*,
   11 Cal. App. 5th 782 (2017) ............................................................................................. 3, 4

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*,
   140 S. Ct. 1637 (2020) .......................................................................................................... 2

*Goldman v. KPMG LLP*,
   173 Cal. App. 4th 209 (2009) ............................................................................................... 3

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) ................................................................................................ 6

*Martinez-Gonzalez v. Elkhorn Packing Co.*,
   635 F. Supp. 3d 883 (N.D. Cal. 2022) .......................................................................... 3, 4, 6

*Morales v. Lexxiom, Inc.*,
   2010 WL 11507515 (C.D. Cal. Jan. 29, 2010) .................................................................. 7, 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .................................................................................................................. 7

*In re Pac. Fertility Ctr. Litig.*,
   814 F. App'x 206 (9th Cir. 2020) ......................................................................................... 7

*Russell v. BMW of N. Am., LLC*,
   2022 WL 18674435 (C.D. Cal. Oct. 14, 2022) ..................................................................... 3

**Statutes**

9 U.S.C. § 3 .................................................................................................................................... 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff alleges that defendants HRB Digital LLC and HRB Tax Group, Inc. (collectively, "H&R Block") engaged in a fraudulent and concerted scheme with Meta to share his tax-return information for both companies' financial benefit. Meta previously asked this Court to sever the claims against it and consolidate them with a related action pending before this Court. But plaintiff successfully opposed severance and consolidation on the ground that, after he dropped his wiretapping claims that overlapped with the related action, his remaining Internal Revenue Code and RICO claims against H&R Block and Meta presented a "unitary problem" that should be litigated in one action. Dkt. 79 at 6 (quotation marks omitted). Now, H&R Block has moved to compel arbitration of plaintiff's claims against it under a contract plaintiff entered—the Online Services Agreement—as a precondition of using H&R Block's tax-return preparation services. If this Court grants H&R Block's motion, then under the doctrine of equitable estoppel, it should also compel arbitration of plaintiff's claims against Meta—or, alternatively, stay those claims until the H&R Block arbitration is resolved.[1]

**BACKGROUND**

Meta's motion to dismiss, filed concurrently with this motion, recounts the relevant background facts relating to Meta's Pixel tool, Meta's policies, and plaintiff's allegations. Plaintiff alleges that H&R Block installed Meta's Pixel tool on the H&R Block website, and that when plaintiff used H&R Block's website to prepare his tax returns, H&R Block transmitted his tax-return information to Meta. Plaintiff asserts claims under the Internal Revenue Code and RICO against H&R Block, Meta, and Google.[2]

---

[1] Google—who allegedly also received plaintiff's information through its own analytics technology on H&R Block's website—has filed a similar motion seeking to compel arbitration of plaintiff's claims against it based on equitable estoppel or, alternatively, seeking a stay. *See* Dkt. 93.

[2] Plaintiff initially brought federal and state wiretapping claims in addition to his Internal Revenue Code and RICO claims. Dkt. 1 ¶¶ 223–86. In an effort to avoid consolidation with a related action pending before this Court, however, plaintiff dropped his wiretapping claims. *See* Dkts. 12 (first amended complaint), 36 (second amended complaint). *See generally* Dkt. 72 (Meta's motion to sever and consolidate).

Meta previously moved to sever plaintiff's claims against Meta so that they could be consolidated with a related action pending before this Court, *In re Meta Tax Filing Cases*, Case No. 5:22-cv-07557-PCP (N.D. Cal. Dec. 1, 2022). Dkt. 72. Plaintiff opposed that motion, arguing that his "RICO claims against Meta are closely tied to his RICO claims against H&R Block." Dkt. 79 at 2. Plaintiff argued that severance was "inappropriate" because there were "common, overlapping factual and legal issues posed by [plaintiff's] RICO claims": he contended that "[t]he core act that allowed" the alleged RICO enterprise between Meta and H&R Block "to function . . . was the installation of Meta's Pixel on H&R Block's website," such that his "RICO claims against Meta arise out of the same transaction or occurrence as his RICO claims against H&R Block." *Id.* at 2–3, 5; *see also, e.g.*, *id.* at 6 (arguing the claims against Meta and H&R Block were a "classic 'unitary problem'"); *id.* at 7 (arguing that separately litigating the claims against Meta and H&R Block "would force this Court to engage in impermissible claim-splitting"). This Court denied Meta's motion to sever and consolidate, concluding that plaintiff's claims against Meta and H&R Block were "clearly intertwined." Dkt. 85 at 2.

H&R Block moved to compel arbitration of plaintiff's claims against it and to stay litigation of those claims while they are arbitrated. Dkt. 86. H&R Block represents that its Online Services Agreement—which plaintiff concedes users "must agree to" in order to use H&R Block's online tax preparation services, Second Amended Complaint ("Compl."), Dkt. 36 ¶ 102—requires plaintiff to individually arbitrate his Internal Revenue Code and RICO claims against H&R Block. *See* Dkt. 86 at 10–15. The same day, Google filed a motion requesting that, if the Court grants H&R Block's motion, it also compel arbitration of the claims against Google on equitable estoppel grounds (or, alternatively, for a stay pending resolution of the H&R Block arbitration). Dkt. 93. Those motions are pending; a hearing is scheduled for April 18. Dkt. 99.

**ARGUMENT**

**I.   If the Court Grants H&R Block's Motion to Compel Arbitration, It Should Also Compel Arbitration of Plaintiff's Claims Against Meta Under the Doctrine of Equitable Estoppel.**

The Federal Arbitration Act "permits a nonsignatory to rely on state-law equitable estoppel doctrines to enforce an arbitration agreement." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020); *see also Franklin v. Cmty. Reg'l Med.*

*Ctr.*, 998 F.3d 867, 870–71 (9th Cir. 2021).  The Online Services Agreement provides that "[e]xcept as otherwise provided in the Arbitration Agreement, this Agreement is governed by, interpreted, construed, and enforced in accordance with the law of the state where you accepted this Agreement except to the extent inconsistent with or preempted by federal law," Dkt. 88-4 at 19, and plaintiff alleges he "resides in Stevenson Ranch, California, and filed his returns from that location," Compl. ¶ 199; *see also* Dkt. 88 ¶¶ 7–9 (H&R Block declaration explaining users assent to the Online Services Agreement when they log in to their H&R Block account).  Meta thus assumes that California law applies.  Under California law, "equitable estoppel applies to allow a nonsignatory to enforce an arbitration agreement in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are 'intimately founded in and intertwined with' the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'" *Martinez-Gonzalez v. Elkhorn Packing Co.*, 635 F. Supp. 3d 883, 893 (N.D. Cal. 2022) (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219, 221 (2009); some quotation marks omitted); *see also Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 786 (2017).

A nonsignatory—here, Meta—need only satisfy one of these two conditions to enforce an arbitration agreement.  *See Russell v. BMW of N. Am., LLC*, 2022 WL 18674435, at *5 (C.D. Cal. Oct. 14, 2022).  Here, both conditions are met.

### A. Plaintiff's Claims Against Meta Are Intertwined with His Agreement with H&R Block.

Equitable estoppel allows a nonsignatory to invoke an arbitration agreement when a plaintiff's claims "are intimately founded in and intertwined with the underlying contract." *Martinez-Gonzalez*, 635 F. Supp. 3d at 893 (quotation marks omitted).  Here, plaintiff's claims arise out of his use of H&R Block's online tax-preparation services, and his use of those services is governed by H&R Block's Online Services Agreement.  The Online Services Agreement "governs [plaintiff's] use of Products and Services . . . provided by H&R Block," and it explicitly makes plaintiff's "use of the Products and Services . . . subject to [H&R Block's] Privacy Notice."  Dkt. 88-4 at 1, 4.  "Products and Services"

include H&R Block's tax return preparation services (which plaintiff alleges he used) as well as "any other product or service offered or delivered by H&R Block, H&R Block Affiliates, or their franchisees, that [users] select, pay for, or use." *See id.* at 5, 20; Compl. ¶¶ 198, 201, 251. And all of plaintiff's claims against Meta hinge on his allegation that H&R Block improperly shared the information he provided while using its services: he alleges a "fraudulent scheme to intercept, collect and transmit [his] TRI data" carried out through "misrepresentations and omissions regarding the handling and transmission of TRI." Compl. ¶¶ 204–12; *see also, e.g.*, *id.* ¶¶ 224, 227 (RICO claim based on alleged "scheme to fraudulently obtain TRI data . . . by concealing from consumers that H&R Block was sharing sensitive TRI with Meta and Google"); 239–40 (same basis for RICO conspiracy claim); 252–54 (similar for Internal Revenue Code claim).

For at least two reasons, plaintiff's claims are "intimately founded in and intertwined with" the Online Services Agreement. *Martinez-Gonzalez*, 635 F. Supp. 3d at 893 (quotation marks omitted).

*First*, plaintiff's claims could not exist at all without the Online Services Agreement. As plaintiff admits, he could not use H&R Block's online services without assenting to the Online Services Agreement. Compl. ¶ 102. The Online Services Agreement establishes plaintiff's relationship with H&R Block and defines its scope—including the terms on which plaintiff may use H&R Block's online tax-preparation services. Without that relationship and use of H&R Block's tax-preparation services, plaintiff would have no arguable basis to assert claims against Meta. *Cf. Franklin*, 998 F.3d at 875 (compelling arbitration of claims against nonsignatory where claims were "rooted in [the plaintiff's] employment relationship with [the signatory], which is governed by the Arbitration Agreement"); *Boucher v. All. Title Co.*, 127 Cal. App. 4th 262, 272–73 (2005) (similar); *see also Pexco*, 11 Cal. App. 5th at 787–88 (nonsignatory may invoke equitable estoppel even where claims are "based upon statutory, not contractual rights").

*Second*, plaintiff's claims are substantively premised on the Online Services Agreement (including H&R Block's Privacy Notice, which it incorporates), which sets the terms on which H&R Block may use plaintiff's data. *See* Compl. ¶ 103. As plaintiff alleges, "H&R Block's Privacy Notice explains what kind of information about customers it collects, as well as where it gets the information," and further "states that H&R Block may disclose customer information" under certain circumstances.

4
DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL OR STAY —
CASE NO. 5:23-CV-04953-PCP

*Id.* Plaintiff's claims turn on his assertion that H&R Block failed to disclose that it would share his tax return information with Meta. He asserts, for example, that the Privacy Notice "did not, at all relevant times, meet IRS regulatory requirements," "did not disclose to Plaintiff or the putative class members that gathered information would include TRI," and "did not list any of the recipients of customers' TRI, such as Meta and Google." *Id.* ¶ 105; *see also, e.g.*, *id.* ¶¶ 106, 107–14 (similar).[3] Plaintiff's allegations of mail and wire fraud—the predicates for his RICO claims—are also rooted in his theory that "[t]he mails and wires were used to transmit fraudulent communications to Plaintiff and the putative class members regarding H&R Block's privacy and data security policy." Compl. ¶ 171; *see id.* ¶¶ 168–97. And plaintiff alleges he "would not have used H&R Block to prepare his taxes" had he been aware of this allegedly fraudulent "scheme" to share more of his information than was disclosed. *Id.* ¶ 202.

Plaintiff's theory of liability is thus expressly and necessarily intertwined with the Online Services Agreement and its terms regarding the use and disclosure of plaintiff's data. *Cf. Franklin*, 998 F.3d at 876 (compelling arbitration where agreement "set[] out" signatory's relevant "duties"); *Cohen v. CBR Sys., Inc.*, 625 F. Supp. 3d 997, 1006 (N.D. Cal. 2022) (compelling arbitration where plaintiffs alleged they were "charged fees beyond what the contract allows and that they were fraudulently induced to enter the contract"). Under these circumstances, Meta is entitled to invoke the Online Services Agreement's arbitration provision.

**B.    Plaintiff Alleges Interdependent and Concerted Misconduct by Meta and H&R Block That Is Founded in the Obligations of His Agreement with H&R Block.**

Equitable estoppel also allows a nonsignatory to invoke an arbitration agreement when a plaintiff "alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct [are] founded in or intimately connected

---

[3] Notably, the Privacy Notice discloses that H&R Block uses pixel technology when users "interact with [H&R Block's] websites, online products and services, mobile applications, advertisements, and emails," and further discloses that H&R Block uses this technology "for a variety of reasons, including to better manage content on our websites, to help us understand usage patterns, track your preferences and understand your interests, fix issues, improve our products and services, remember you, and personalize your online experience." Dkt. 92-6 at 2, 5; *see also id.* at 5 ("We or third parties working on our behalf use tracking technologies to report analytics to use or provide advertising about products and services tailored to your interests.").

with the obligations of the underlying agreement." *Martinez-Gonzalez*, 635 F. Supp. 3d at 893 (quotation marks omitted); *see also, e.g.*, *In re Apple iPhone 3G Prods. Liab. Litig.*, 859 F. Supp. 2d 1084, 1096–97 (N.D. Cal. 2012) (compelling arbitration where plaintiffs alleged "a 'fraudulent scheme' where [the defendants] conspired together to engage in 'racketeering activity'"). Here, plaintiff alleges H&R Block and Meta entered into an "illegal enterprise" to share his tax return information, which he claims was both a "legal association" and an "association in fact," and that "H&R Block and Meta worked together in a coordinated pattern of effort." Compl. ¶¶ 127–28, 130, 137; *see generally id.* ¶¶ 9, 126–46. He claims there was a "symbiotic relationship between H&R Block and Meta" that "came into existence at least by 2015 and lasted through at least 2022," and that H&R Block and Meta "colluded together to create [a] pattern of coordinated racketeering activity to enhance their bottom lines." *Id.* ¶¶ 136, 139. Indeed, plaintiff successfully opposed severance and consolidation by arguing that his claims against H&R Block and Meta sprung from "the same transaction or occurrence" and presented a "classic 'unitary problem.'" Dkt. 79 at 5–6. Having defeated severance and consolidation on that basis, plaintiff is now judicially estopped from taking a contrary position. *See, e.g.*, *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (judicial estoppel "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position").[4]

And, for reasons similar to those above, the alleged misconduct is "founded in or intimately connected with the obligations of the underlying agreement." *Martinez-Gonzalez*, 635 F. Supp. 3d at 893 (quotation marks omitted). Again, H&R Block's entire relationship with plaintiff and plaintiff's ability to use H&R Block's services—the basis for all of plaintiff's claims—are rooted in the Online Services Agreement. *Cf. In re Apple*, 859 F. Supp. 2d at 1096 (finding claims intertwined with agreement where plaintiffs "only had access to" defective cell network "because they had signed contracts with [signatory defendant] which granted them access to that network"). And the Online Services

---

[4] Plaintiff's arguments in opposition to severance and consolidation focused primarily on his RICO claims. *See generally* Dkt. 79. But his claim under the Internal Revenue Code likewise depends on concerted action between H&R Block and Meta, because plaintiff's theory is that Meta violated 26 U.S.C. § 6103 by "inspecting" his tax return information after H&R Block improperly "disclos[ed]" it to Meta. Compl. ¶¶ 253–54.

Agreement further defines the terms on which H&R Block may use plaintiff's data, so any alleged *misuse* is necessarily tethered to the terms and obligations of that agreement. *Cf. In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020) (compelling arbitration against nonsignatory because "[u]nderlying each claim are allegations about [the signatory's] conduct," and signatory's services to plaintiffs were set out in "the terms and obligations" of the arbitration agreement). As a result, Meta is entitled to invoke the Online Services Agreement's arbitration provision.

## II. In the Alternative, the Court Should Stay Litigation of Plaintiff's Claims Against Meta Pending Arbitration of His Claims Against H&R Block.

If the Court compels arbitration of plaintiff's claims against H&R Block but declines to compel arbitration of his claims against Meta, then the Court should—at a minimum—stay litigation of the claims against Meta pending resolution of the H&R Block arbitration. A stay of the claims against H&R Block pending arbitration "is mandatory and must be granted as to all matters within the scope of the arbitration agreement." *BrowserCam, Inc. v. Gomez, Inc.*, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009); *see* 9 U.S.C. § 3. Whether to also "stay litigation among the non-arbitrating parties pending the outcome of the arbitration" is "a matter of [this Court's] discretion." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983). In exercising that discretion, courts may consider judicial economy, efficiency, and prejudice. *See Morales v. Lexxiom, Inc.*, 2010 WL 11507515, at *11 (C.D. Cal. Jan. 29, 2010); *BrowserCam*, 2009 WL 210513, at *3.

Here, where plaintiff asserts the same causes of action based on the same facts against H&R Block and Meta, these considerations counsel in favor of a stay. Indeed, plaintiff himself previously argued—successfully—that these exact same considerations weighed against separately litigating his claims against H&R Block and his claims against Meta. *See* Dkt. 79 at 5–8 (opposing severance). And as other courts have held (including specifically in the RICO context), where some parties "are not signatories to [an arbitration agreement], a stay of all issues, and as to all parties, is warranted when questions of fact common to all would be involved in both the litigation and the arbitration." *Morales*, 2010 WL 11507515, at *11 (quoting *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1114 (C.D. Cal. 2002)). Nor would a stay prejudice plaintiff—to the contrary, *both* parties will benefit from allowing any future litigation to proceed more efficiently in light of any legal or factual developments in the

H&R Block arbitration that may bear on plaintiff's overlapping claims against Meta. And, absent a stay, "the parties could very well be prejudiced if there were inconsistent findings as between the present action and the contractually-agreed-upon arbitrations." *Id.* (granting stay because "[i]f arbitration determines that the [signatory defendants] did not engage in misrepresentation or otherwise breach their professional duties, then the alleged RICO enterprise collapses"). As other courts have done in these circumstances, this Court should grant a stay if it declines to compel arbitration of plaintiff's claims against Meta.

## CONCLUSION

If the Court grants H&R Block's motion to compel arbitration, it should also compel arbitration of plaintiff's claims against Meta. Alternatively, and at a minimum, the Court should stay litigation of plaintiff's claims against Meta pending resolution of the H&R Block arbitration.

Dated: March 1, 2024

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman

**COOLEY LLP**

By: */s/ Michael G. Rhodes*
Michael G. Rhodes

*Attorneys for Meta Platforms, Inc.*

**CIVIL L.R. 5-1(h)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: March 1, 2024          **GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
    Lauren R. Goldman