Stacey R. Gilman (SBN 186396)
Jennifer B. Wieland (SBN 223841)
Anthony J. Durone (admitted *pro hac vice*)
BERKOWITZ OLIVER LLP
2600 Grand Blvd., Suite 1200
Kansas City, Missouri 64108
Telephone:      (816) 561-7007
Facsimile:      (816) 561-1888
sgilman@berkowitzoliver.com
jwieland@berkowitzoliver.com
adurone@berkowitzoliver.com

Ronald C. Finley (SBN 200549)
Alison P. Buchanan (SBN 215710)
Remington A. Lenton-Young (SBN 295392)
Manda N. McElrath (SBN 345206)
HOGE, FENTON, JONES & APPEL, INC.
55 South Market Street, Suite 900
San Jose, California 95113-2324
Telephone:      (408) 287-9501
Facsimile:      (408) 287-2583
ron.finley@hogefenton.com
alison.buchanan@hogefenton.com
remington.lenton-young@hogefenton.com
manda.mcelrath@hogefenton.com

Archis A. Parasharami (SBN 321661)
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone:      (415) 874-4230
aparasharami@mayerbrown.com

Attorneys for Defendants
HRB DIGITAL LLC AND HRB TAX GROUP, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN HUNT,<br><br>   Plaintiff,<br><br> v.<br><br>META PLATFORMS, INC., et al.,<br><br>   Defendants. | Case No. 5:23-cv-04953-PCP<br><br>**DEFENDANTS HRB DIGITAL LLC AND HRB TAX GROUP, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION**<br><br>Date: May 9, 2024<br>Time: 10:00 a.m.<br>Location: Courtroom 8, 4th Floor<br><br>Hon. P. Casey Pitts |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

ARGUMENT ............................................................................................................... 1

    A.    Plaintiff's Claims Are Within The Scope Of His Arbitration Agreement. ............ 1

    B.    Plaintiff's Allegations Of Fraud In The Inducement Are For The
Arbitrator To Decide. ......................................................................................... 4

    C.    The Arbitration Agreement Is Not Unconscionable. ............................................ 6

        1.    The Arbitration Agreement Is Not Procedurally Unconscionable. ............ 6

        2.    The Arbitration Agreement Is Not Substantively Unconscionable. .......... 7

            a.    The pre-arbitration process is enforceable. ................................... 7

            b.    The mass arbitration procedures are enforceable. .......................... 9

            c.    The challenged terms are easily severable. ................................. 14

CONCLUSION ........................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011) ...................................................................8

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ...........................................................................2

*Arellano v. T-Mobile USA, Inc.*,
  2011 WL 1362165 (N.D. Cal. Apr. 11, 2011) ....................................11

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) ...........................................................................4

*ASARCO, LLC v. Union Pacific R.R.*,
  765 F.3d 999 (9th Cir. 2014) ...............................................................9

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ...............................................................2, 7, 8, 13

*Bell v. Am. Income Life Ins. Co.*,
  2021 WL 4861171 (C.D. Cal. Apr. 5, 2021) ......................................11

*Briggs v. Merck Sharp & Dohme*,
  796 F.3d 1038 (9th Cir. 2015) ...........................................................13

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006) ...........................................................................5

*Cal. Crane School, Inc. v. Google LLC*,
  2024 WL 1221964 (N.D. Cal. Mar. 21, 2024) ...............................1, 5, 7

*Caremark, LLC v. Chickasaw Nation*,
  43 F.4th 1021 (9th Cir. 2022) .............................................................5

*Circuit City Stores, Inc. v. Ahmed*,
  283 F.3d 1198 (9th Cir. 2002) .............................................................7

*CompuCredit Corp. v. Greenwood*,
  565 U.S. 95 (2012) .............................................................................2

*Cottrell v. AT&T Inc.*,
  2021 WL 4963246 (9th Cir. Oct. 26, 2021) ......................................10

*Doctor's Assocs., Inc. v. Casarotto*,
  517 U.S. 681 (1996) ...........................................................................2

ii

1

2

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)........................................................................................2

3

4

*Gerton v. Fortiss, LLC*,
2016 WL 613011 (N.D. Cal. Feb. 16, 2016) .......................................................11

5

*In re Hanford Nuclear Reservation Litig.*,
534 F.3d 986 (9th Cir. 2008) ...........................................................................13

6

7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019)......................................................................................2

8

9

*Hodges v. Comcast Cable Communications, LLC*,
21 F.4th 535 (9th Cir. 2021) ...........................................................................10

10

*Howard Bank v. Compu-Link Corp.*,
472 F. Supp. 3d 267 (D. Md. 2020).....................................................................8

11

12

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ........................................................................2, 3

13

14

*Lag Shot LLC v. Facebook, Inc.*,
545 F. Supp. 3d 770 (N.D. Cal. 2021) ..................................................................8

15

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)......................................................................................2, 3

16

17

*Lang v. Skytap, Inc.*,
347 F. Supp. 3d 420 (N.D. Cal. 2018) .................................................................14

18

19

*Laster v. AT&T Mobility LLC*,
584 F.3d 849 (9th Cir. 2009) .............................................................................8

20

*Lee v. American Express Travel Related Services, Inc.*,
348 F. App'x 205 (9th Cir. 2009) ......................................................................11

21

22

*MacClelland v. Cellco Partnership*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022), *appeal pending,* No. 22-16020
(9th Cir.)..............................................................................9, 10, 11, 12, 14

23

24

*Marathon Entm't, Inc. v. Blasi*,
174 P.3d 741 (Cal. 2008) ...............................................................................14

25

26

*In re Marriage of Factor*,
212 Cal.App.4th 967 (2013) ...........................................................................14

27

28

*Mohammed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ..................................................................6, 7

*Morgan v. AT&T Wireless Services, Inc.*,
177 Cal.App.4th 1235 (2009) ...........................................................................8

*PacifiCare Health Sys., Inc. v. Book*,
538 U.S. 401 (2003)..........................................................................................2

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) ...........................................................6, 7, 14

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967)......................................................................................4, 5

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010).......................................................................................2, 3

*Rossi v. Purvis*,
--- F. Supp. 3d ----, 2024 WL 319679 (N.D. Cal. Jan. 29, 2024) ...............5

*Serpa v. Cal. Surety Investigations, Inc.*,
215 Cal.App.4th 695 (2013) .........................................................................7, 8

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987)..........................................................................................2

*Simula, Inc. v. Autolive Inc.*,
175 F.3d 716 (9th Cir. 1999) ...........................................................................3

*Specht v. Netscape Communications Corp.*,
306 F.3d 17 (2d Cir. 2002).........................................................................2, 4

*St. Paul Fire & Marine Ins. Co. v. AmerisourceBergen Corp.*,
80 Cal.App.5th 1 (2022) .................................................................................13

*Stevenson v. Sirius XM Radio Inc.*,
2023 WL 7434945 (N.D. Cal. Nov. 9, 2023), *appeal filed*, No. 23-4338 (9th
Cir. filed Dec. 22, 2023) ..........................................................................10, 11

*Whitworth v. SolarCity Corp.*,
336 F. Supp. 3d 1119 (N.D. Cal. 2018) .........................................................11

**Statutes and Rules**

Cal. Civ. Code § 1599....................................................................................14

iv

**TABLE OF AUTHORITIES**
Continued

**Page(s)**

Cal. Civ. Code § 1782 ................................................................................................8

Cal. Com. Code § 2607(a)(3) .....................................................................................8

Fed. R. Civ. P. 15(c)(1)(B) ........................................................................................9

**Other Authorities**

AAA, Mass Arbitration Supplementary Rules (Jan. 15, 2024) ..........................8, 12

Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L.
    Rev. 2323 (2008) .................................................................................................13

Manual for Complex Litigation, Fourth (2004) ........................................................12

U.S. Judicial Panel on Multidistrict Litigation, *Multidistrict Litigation Terminated
    Through September 30, 2021* ..............................................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS HRB DIGITAL LLC AND HRB TAX GROUP'S REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND TO STAY LITIGATION; CASE NO. 5:23-CV-04953-PCP

Plaintiff Justin Hunt admits that, when he accepted H&R Block's Online Services Agreement, he agreed to arbitrate "all disputes and claims" between him and the H&R Block Defendants. Schuessler Decl. Ex. 4 § 11.1.

Despite this broad language, Plaintiff contends that his claims are outside the scope of that agreement because, according to him, the claims have no connection to the Online Services Agreement or Plaintiff's use of H&R Block's services. Plaintiff is wrong on both counts. First, the contract does not limit the scope of Plaintiff's arbitration agreement in the manner he suggests. Instead, the Federal Arbitration Act ("FAA") requires enforcing his arbitration agreement according to its terms—and that agreement covers "all disputes and claims." Second, and despite his arguments to the contrary, Plaintiff's claims *are* directly connected to the Online Services Agreement because they unavoidably flow from the online tax preparation and filing services provided under the Agreement's terms, including its privacy provisions.

Plaintiff's other arguments fare no better. He alleges that he was fraudulently induced into accepting the Online Services Agreement, but under binding Supreme Court precedent, that argument is for an arbitrator to decide. And his unconscionability challenges fail at every step. Plaintiff cannot show any procedural unconscionability because he could opt out of arbitration— just as this Court recently held. *Cal. Crane School, Inc. v. Google LLC*, 2024 WL 1221964, at *3 (N.D. Cal. Mar. 21, 2024). That is reason enough to reject his unconscionability arguments. But even if the Court were to reach Plaintiff's substantive unconscionability challenges to his arbitration agreement's provisions relating to pre-arbitration notice of dispute and settlement procedures or mass arbitrations, those challenges are baseless for the reasons detailed below.

The Court therefore should enforce Plaintiff's arbitration agreement under the FAA and stay the claims pending the outcome of Plaintiff's arbitration.

## ARGUMENT

### A. Plaintiff's Claims Are Within The Scope Of His Arbitration Agreement.

Plaintiff's argument (Opp. 3-8) that his claims are outside the scope of his arbitration agreement is misguided for at least two reasons.

1

*First*, Plaintiff's proposed limitation on the scope of his arbitration agreement is nowhere to be found in the plain text of his arbitration agreement. Plaintiff agreed to arbitrate "all disputes and claims" between him and the "H&R Block Parties," which are defined to include the H&R Block Defendants here. *See* Schuessler Decl. Ex. 4 § 11.1; Mot. 11.

The FAA requires enforcing that clear and unambiguous language, which encompasses Plaintiff's claims. Time and again, the Supreme Court has explained that Section 2 of the FAA requires courts to enforce arbitration agreements "according to their terms."[1] The "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Indeed, the Supreme Court has specifically held that civil RICO claims are arbitrable. *See* Mot. 15 (citing *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003)).

The cases Plaintiff cites are inapposite and involved narrower arbitration clauses. For example, Plaintiff principally relies on *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023), but the applicable arbitration clause was limited to claims "'arising out of or relating in any way *to this Agreement*'"—which was the agreement governing drivers' use of the Amazon Flex program. *Id.* at 1101 (emphasis added). That emphasized language was why the Ninth Circuit observed that "[t]o be arbitrable, the dispute must relate to the contract." *Id.* Similarly, the arbitration clause in the software licensing agreement at issue in *Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d Cir. 2002), was limited to "'all disputes relating to this Agreement.'" *Id.* at 35. Plaintiff's arbitration agreement contains no such limitations.

*Second*, and despite his claims to the contrary, Plaintiff's argument fails on its own terms, because his claims *are* directly related to the Online Services Agreement and the H&R Block services provided under the terms of that agreement. Plaintiff's claims are all predicated on his allegation that, when he *used H&R Block online tax preparation and filing services*, his "private

---

[1] *See, e.g.*, *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 688 (1996).

data" collected through use of the services was impermissibly shared with third parties. *See* SAC ¶¶ 84-88, 95-96, 107-110, 225, 239, 252. The Online Services Agreement containing Plaintiff's arbitration agreement expressly "governs [Plaintiff's] use of Products and Services" provided by the H&R Block Defendants, including with respect to the privacy of his personal information. *See* Schuessler Decl. Ex. 4, Online Services Agreement §§ 1.1 and 4 ("Your Privacy").

For instance, in Section 4.3, "**Your Tax Information**," Plaintiff agreed: "Through your use of the Products and Services, you may be required or requested to supply certain Tax Information or other personal financial information." *Id.* That is the information that forms the basis of Plaintiff's allegations.

Moreover, in Section 4.1, "**Our Privacy Notice**," Plaintiff was notified of and agreed that his "use of the Products and Services is subject to our Privacy Notice, available at: http://www.hrblock.com/universal/software_privacy_policy.html." *Id.* Tellingly, the complaint relies directly on that Privacy Notice, alleging that the notice did not adequately disclose the conduct alleged in this case and did not suffice to obtain Plaintiff's consent to that conduct. SAC ¶¶ 107-114. While the H&R Block Defendants dispute those allegations, the allegations further confirm that Plaintiff's claims certainly "touch on matters" relating to the Online Services Agreement and incorporated Privacy Notice. *Simula, Inc. v. Autolive Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). And while there should be no doubt on that score, the FAA requires, as a matter of substantive federal law, resolving any uncertainties about scope in favor of arbitration. *See* Mot. 14 (citing, *e.g.*, *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019)).

For these reasons, the allegations here are not comparable to those in *Jackson* or *Specht*. In *Jackson*, the Ninth Circuit held that, because the plaintiff had alleged that Amazon illegally wiretapped and intercepted his Facebook group communications when he was "*not* working," his claims were insufficiently related to his work as a driver using the Amazon Flex program or the Flex contract terms. 65 F.4th at 1101 (emphasis added). And in *Specht*, there were two separate software license agreements at issue; that fact led the court to hold that an arbitration clause covering only claims relating to the first set of software programs could not extend to allegations

DEFENDANTS HRB DIGITAL LLC AND HRB TAX GROUP'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION; CASE NO. 5:23-CV-04953-PCP

that a second, different set of software programs transmitted personal data. 306 F.3d at 36-38.

Here, by contrast, there is a single relevant contract—the Online Services Agreement—that governs Plaintiff's use of H&R Block's online tax preparation and filing services, and his claims are directly related to his use of those services. Trying to avoid that common-sense conclusion, Plaintiff speculates that dependents or spouses who file joint tax returns could assert claims without accepting the Online Services Agreement. Opp. 6-7. Of course, that issue is not presented here; Plaintiff recognizes that he agreed to the Online Services Agreement and used H&R Block's services.[2]

In short, Plaintiff's claims are easily encompassed by his agreement to arbitrate "all disputes and claims" he has against the H&R Block Defendants.

## B. Plaintiff's Allegations Of Fraud In The Inducement Are For The Arbitrator To Decide.

Under long-established Supreme Court precedent, Plaintiff's fraudulent inducement argument (Opp. 8-10) is for the arbitrator to decide, because it is directed at the Online Services Agreement as a whole. In particular, Plaintiff insists that had he known of the alleged transmission of his personal information "he would not have used H&R Block" *at all*. Opp. 10 (citing SAC ¶¶ 202, 210); *see also id.* at 2 ("Had Mr. Plaintiff been made aware that H&R Block did not intend to comply with applicable law, and instead was engaged in an illegal enterprise with Meta and Google to share his highly sensitive TRI, he *would not have used H&R Block*.") (emphasis added).

But Plaintiff's argument is foreclosed by precedent. The Supreme Court in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395 (1967), squarely addressed "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." *Id.* at 402. The Court answered that, under the FAA, the arbitrator must decide such claims. The Court explained that, because an arbitration agreement

---

[2] That said, H&R Block's position is that such dependents or spouses are also bound to the Online Services Agreement, including its arbitration provision, as non-signatories under state-law principles such as agency, equitable estoppel, or third-party beneficiary doctrine. It is well settled that a contract may be "enforced by or against" nonsignatories under "'traditional principles' of state law." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Of course, even those individuals' claims would still be dependent on *someone* providing their personal information in the course of using H&R Block's online tax preparation and filing services.

4

is treated as an independent agreement separate from the underlying contract, the FAA "does not permit [a] federal court to consider claims of fraud in the inducement of the contract *generally*." *Id.* at 403-04 (emphasis added). Instead, a court may consider only claims of "fraud in the inducement of the arbitration clause itself." *Id.* at 403.

The Supreme Court reiterated that holding in *Buckeye Check Cashing, Inc. v. Cardegna*, explaining that *Prima Paint* establishes that (1) "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract"; and (2) "unless the challenge is to the arbitration clause *itself*, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. 440, 445-46 (2006) (emphasis added).

Based on this precedent, this Court recently held that "courts may resolve challenges directed specifically to the validity of the arbitration provision itself," but if there are no arbitration-specific challenges, "the court must send to the arbitrator any other challenges, including challenges to the validity of the contract as a whole." *Rossi v. Purvis*, --- F. Supp. 3d ----, 2024 WL 319679, at *5 (N.D. Cal. Jan. 29, 2024) (citing *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) (citing in turn *Buckeye* and *Prima Paint*)). Specifically, "in the presence of an otherwise-valid arbitration provision, a challenge that the entire agreement was fraudulently induced . . . must be sent to the arbitrator." *Id.*; *see also*, *e.g.*, *Cal. Crane School, Inc. v. Google LLC*, 2024 WL 1221964, at *3 & n.4 (N.D. Cal. Mar. 21, 2024) (applying same rule).

These controlling precedents are dispositive. Plaintiff's allegations here—that he was fraudulently induced to enter into the Online Services Agreement and use H&R Block's online services by purported misrepresentations about H&R Block's privacy policies—are indistinguishable from the allegations in *Prima Paint* that were for the arbitrator to decide—namely, that the plaintiff in *Prima Paint* was induced into entering the underlying contract by the defendant's purported misrepresentations about its solvency. 388 U.S. at 398. Just like in *Prima Paint*, the allegations here relate to "fraud in the inducement of the entire contract" and are not specific to "the agreement to arbitrate." *Id.* at 402, 406.

Plaintiff acknowledges the FAA's rule of severability. Yet in an effort to evade it, Plaintiff

5

insists (Opp. 8, 10) that the arbitration agreement itself was induced by fraud. But Plaintiff provides no support for this conclusory assertion. As explained above, Plaintiff is alleging that he would not have used H&R Block *at all*—he does not say that he would have agreed to the Online Services Agreement but not to the arbitration provision. Simply put, there is nothing arbitration-specific about Plaintiff's allegations of fraudulent inducement. They are therefore for the arbitrator to decide.

## C. The Arbitration Agreement Is Not Unconscionable.

Under California law, Plaintiff "must demonstrate that the contract [for arbitration] as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). California courts apply "a sliding scale," meaning that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quotation marks omitted). Even under the sliding scale, "*both* procedural and substantive unconscionability must be present in order for an agreement to be unenforceable." *Mohammed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (emphasis added). Plaintiff has not met his burden of showing either form of unconscionability, much less both.

### 1. The Arbitration Agreement Is Not Procedurally Unconscionable.

Plaintiff does not deny that H&R Block's method of presenting and obtaining assent to the Online Services Agreement satisfies settled principles of contract formation. *See* Mot. 11-14. Plaintiff's single paragraph on procedural unconscionability asserts only that the agreement is a standardized form contract that he could not negotiate. *See* Opp. 11.

But Plaintiff tellingly fails to mention that he had the opportunity to opt out of the arbitration agreement within 30 days of entering into the Online Services Agreement. *See* Mot. 9; Decl. of Bobbie Crew ¶ 4. Under Ninth Circuit precedent, the ability to opt out is dispositive, defeating any assertion of procedural unconscionability directed at the arbitration agreement. An "arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Mohammed*, 848

F.3d at 1211 (citing *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002)). As this Court recently put it, "[t]he ability to opt out of arbitration within a reasonable timeframe fatally undermines [Plaintiff's] position that the arbitration agreement imposes adhesive terms on customers." *Cal. Crane School*, 2024 WL 1221964, at *3 (holding that Google's 30-day opt out provision defeated procedural unconscionability).

In short, Plaintiff cannot show any procedural unconscionability. And because "both procedural and substantive unconscionability" are required under California law, Plaintiff's argument fails at the first step, and the Court "need not reach the question" of substantive unconscionability. *Mohammed*, 848 F.3d at 1211.

## 2. The Arbitration Agreement Is Not Substantively Unconscionable.

Plaintiff's substantive unconscionability arguments are meritless in any event. Plaintiff challenges (1) the pre-arbitration notice of dispute and informal settlement process; and (2) the mass arbitration provisions. Neither provision is "overly harsh," "unduly oppressive," or "unreasonably favorable" to Defendants. *Poublon*, 846 F.3d at 1261.

### a. The Pre-arbitration Process Is Enforceable.

Plaintiff fails to identify any authority supporting his argument (Opp. 11-15) that the pre-arbitration notice of dispute and informal settlement process is unconscionable. That failure is not surprising: H&R Block's pre-arbitration process applies mutually to both parties (*see* Schuessler Decl. Ex. 4 § 11.2) and gives the parties a cost-free opportunity to resolve disputes informally.[3] A similar requirement was part of the clause in *AT&T Mobility LLC v. Concepcion*, in which the Supreme Court treated that requirement as a *benefit* to consumers, not a burden. *See* 563 U.S. 333, 336-37, 352 (2011).

As a California appellate court has put it, a pre-arbitration notice of dispute process, with its accompanying potential for "informal" resolution, "is both reasonable *and laudable* in an agreement containing a mutual obligation to arbitrate." *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal.App.4th 695, 710 (2013) (emphasis added). Accordingly, including such a process

---

[3] Because both parties must comply with the pre-arbitration process, Plaintiff's assertion (Opp. 14) that the process is "one sided" is false.

1  "plainly does not 'shock the conscience' so as to vitiate the arbitration agreement" on substantive

2  unconscionability grounds. *Id.*[4]

3      Plaintiff's unsupported attempt (Opp. 12-13) to manufacture a conflict between H&R

4  Block's pre-arbitration process and the rules of the American Arbitration Association (AAA) also

5  fails. The arbitration provision at issue in *Concepcion*—which also included a pre-arbitration,

6  notice of dispute process—selected the AAA rules (*see Laster v. AT&T Mobility LLC*, 584 F.3d

7  849, 856 n.10 (9th Cir. 2009), *rev'd sub nom. Concepcion*, 563 U.S. 333), and no court has ever

8  suggested that a conflict between the AAA rules and the provision in *Concepcion* existed. More

9  fundamentally, Plaintiff ignores that parties are free to modify the AAA's default rules by contract.

10 *See Lag Shot LLC v. Facebook, Inc.*, 545 F. Supp. 3d 770, 781 (N.D. Cal. 2021) (collecting cases

11 and holding that agreement to arbitrate "in accordance with American Arbitration Association

12 rules *as modified by*" the parties' arbitration agreement is not substantively unconscionable)

13 (emphasis added). Indeed, "the AAA expressly permits modification of its rules through

14 contract." *Howard Bank v. Compu-Link Corp.*, 472 F. Supp. 3d 267, 278 (D. Md. 2020). And

15 while Plaintiff's opposition attaches an outdated version of the AAA's supplemental rules

16 governing mass arbitrations, the current version of those rules fully supports H&R Block's

17 position: they contemplate that "the parties' contract" may include "filing requirements" or other

18 "conditions precedent" to pursuing an arbitration. AAA, Mass Arbitration Supplementary Rules,

19 at 6 (Jan. 15, 2024), https://bit.ly/49bKJmY. As those rules appear to recognize, it is

20 commonplace—especially in light of the Supreme Court's complimentary statements in

21 *Concepcion*—for arbitration provisions that select the AAA's rules to include pre-arbitration

22 procedures that allow consumers to settle their disputes quickly and without the need for invoking

23 arbitration at all.

24  ────────────

[4] Nor is there anything unusual about pre-filing notice and informal resolution requirements of this

25 kind. For instance, California's Consumers Legal Remedies Act requires consumers to give the
   defendant 30 days' notice and an opportunity to cure the alleged violation before pursuing a claim

26 for damages. *See* Cal. Civ. Code § 1782; *Morgan v. AT&T Wireless Services, Inc.*, 177
   Cal.App.4th 1235, 1259-1260 (2009). Likewise, California requires pre-suit notice for breach of

27 express warranty claims. *See* Cal. Com. Code § 2607(a)(3); *Alvarez v. Chevron Corp.*, 656 F.3d
   925, 932 (9th Cir. 2011). The pre-arbitration process under H&R Block's arbitration provision

28 (like other companies' arbitration clauses) is analogous.

8

The heart of Plaintiff's objection to the pre-arbitration process is his purported concern that consumers' claims could become time-barred during their participation in the process. *See* Opp. 13-15. But Plaintiff is misconstruing both his arbitration agreement and how the process functions.

Significantly, the text of the agreement expressly *tolls* the statute of limitations: "Any applicable statute of limitations will be tolled for the claims and relief set forth in the Notice during the period between the date that either you or we send the other a fully complete Notice, until the later of (1) 60 days after receipt of the Notice; or (2) if a Settlement Conference is timely requested, 30 days after completion of the Settlement Conference." Schuessler Decl. Ex. 4 § 11.2(B). Accordingly, consumers face no risk of losing their claims during the pre-arbitration process.

Plaintiff acknowledges that "tolling is offered" (Opp. 13), but he hypothesizes that a consumer may want to assert additional claims not raised in the initial Notice of Dispute and argues that those additional claims would not be tolled. *Id.* at 13-15. That speculative hypothetical is neither grounded in fact nor any reasonable reading of the agreement. The Online Services Agreement provides that the notice must contain a statement of "the nature or basis of the dispute or claim." Schuessler Decl. Ex. 4 § 11.2(A). That requirement is not onerous. Even if a customer wants to supplement the original Notice of Dispute, nothing in the contract prevents that customer from amending the notice. Moreover, so long as the claims that the consumer seeks to assert are based on the same core of operative facts set out in the original Notice of Dispute, the arbitrator would have a basis to conclude, just as a court could, that the claims relate back to the original notice. *Cf. ASARCO, LLC v. Union Pacific R.R.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citing Fed. R. Civ. P. 15(c)(1)(B)). Thus, arbitration claimants are on the same footing as any other litigant; there is no "statute of limitations trap" (Opp. 14).

In short, Plaintiff's strained objections to the pre-arbitration notice of dispute and settlement process do not demonstrate even a hint of substantive unconscionability.

### b. The Mass Arbitration Procedures Are Enforceable.

Plaintiff next relies on *MacClelland v. Cellco Partnership*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022), *appeal pending,* No. 22-16020 (9th Cir.), in challenging the arbitration agreement's

procedures for addressing coordinated mass arbitrations. Putting aside whether some of the *MacClelland* court's concerns about delay and lack of mutuality were misplaced, *MacClelland* is easily distinguishable.[5]

To begin, unlike the named plaintiffs in *MacClelland*, Plaintiff has not shown that the challenged contract terms have some impact on his *own* dispute. Plaintiff is not represented by counsel who are themselves asserting claims as part of a mass arbitration. The *MacClelland* court noted that the plaintiffs' counsel in that case "currently represent[ed] 2,712 Verizon customers," treated the class action and the threatened mass arbitration involving the same counsel as a package deal, and considered how the mass arbitration procedures in Verizon's agreement would affect those customers. 609 F. Supp. 3d at 1040-42. Here, by contrast, Plaintiff has not shown that his claims even implicate the mass arbitration procedures, much less how application of those procedures would delay the resolution of *his* claims.

Plaintiff contends that the Court can consider his hypothetical arguments because unconscionability is assessed prospectively, from the time the contract is formed. Opp. 18 (citing *MacClelland*, 609 F. Supp. 3d at 1041). But as Judge Orrick recently stated in rejecting the same argument: that "is not the same thing as allowing a plaintiff to challenge provisions of a contract that does not apply to her." *Stevenson v. Sirius XM Radio Inc.*, 2023 WL 7434945, at *4 (N.D. Cal. Nov. 9, 2023), *appeal filed*, No. 23-4338 (9th Cir. filed Dec. 22, 2023). In *Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535 (9th Cir. 2021), the Ninth Circuit made clear that a plaintiff seeking to invalidate his contract must still demonstrate that the challenged contract terms have some impact on his *own* dispute. The *Hodges* court held that a plaintiff who is not seeking a public injunction cannot use the mere presence of a waiver of public injunctive relief in an arbitration agreement to invalidate that agreement. *Id.* at 540-41. As the Ninth Circuit explained, courts may not "stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute." *Id.* at 541; *accord*, *e.g.*, *Cottrell v. AT&T Inc.*, 2021 WL 4963246, at *2 (9th Cir. Oct. 26, 2021) (quoting same).

---

[5] The parties in *MacClelland* have filed notice with the Ninth Circuit that they have settled the case, so the Ninth Circuit is unlikely to have a chance to review the district court's decision.

That common-sense principle is not limited to the public-injunction context. "To assert a right or challenge a violation of a right under a particular provision of a contract, the individual must have been affected by or interacted with the particular provision." *Stevenson*, 2023 WL 7434945, at *4 (rejecting unconscionability challenge to class-action waiver for individuals who opt out of arbitration and collecting cases declining "to reach the legality of contractual provisions that do not apply to the plaintiff in front of them"). For example, in *Lee v. American Express Travel Related Services, Inc.*, 348 F. App'x 205 (9th Cir. 2009), the plaintiffs had sued defendants over their "inclusion of allegedly unconscionable arbitration and other provisions in their credit card agreements," pointing to, among other provisions, the agreements' class-action waivers, which at the time were unenforceable under California law. *Id.* at 206. But the Ninth Circuit held that the plaintiffs lacked standing to challenge "the mere inclusion" of those provisions because they had not brought any underlying claims to which these provisions might apply. *Id.* at 207; *see also*, *e.g.*, *Arellano v. T-Mobile USA, Inc.*, 2011 WL 1362165, at *5 (N.D. Cal. Apr. 11, 2011) (citing *Lee* in holding that a plaintiff lacked standing to challenge a change-in-terms provision "because it has never been applied to her").[6]

As these cases demonstrate, a plaintiff may not challenge the inclusion of contract provisions in the abstract. Yet, unlike in *MacClelland*, that is exactly what Plaintiff is doing here.

*MacClelland* is distinguishable for other reasons as well. Plaintiff asserts that the Verizon bellwether provision in *MacClelland* is "similar" to H&R Block's (Opp. 15), but he fails to mention a material difference. The key concern that led to the *MacClelland* decision was that the *statute of limitations was not tolled* during the bellwether arbitration process, which could result

---

[6] Similarly, in the context of waivers of claims under California's Private Attorneys General Act ("PAGA"), a court has concluded that "Plaintiffs lack standing to make th[e] argument" that the PAGA waiver renders the arbitration agreement unenforceable when "the Complaint does not assert PAGA claims." *Bell v. Am. Income Life Ins. Co.*, 2021 WL 4861171, at *6-7 (C.D. Cal. Apr. 5, 2021); *see also Gerton v. Fortiss, LLC*, 2016 WL 613011, at *3 n.3 (N.D. Cal. Feb. 16, 2016) ("Plaintiff does not have standing to challenge the PAGA waiver provision because the statute of limitations has expired on Plaintiff's PAGA claim."). Another court similarly "raised a concern" about whether plaintiffs "have standing to challenge the enforceability of the arbitration agreement based on [an] invalid PAGA waiver given that they do not bring PAGA claims." *Whitworth v. SolarCity Corp.*, 336 F. Supp. 3d 1119, 1129 (N.D. Cal. 2018). The court ultimately deemed it unnecessary to decide the issue, instead concluding that the allegedly invalid PAGA waiver was severable in the absence of any PAGA claim. *Id.* at 1129-30.

11

in some claims being "forever barred." 609 F. Supp. 3d at 1042; *see id.* ("The clause contains no tolling provision"). Here, by contrast, Section 11.6 of the Online Services Agreement provides that "the statute of limitations applicable to the claims and relief set forth in [the] Notice *shall be tolled from the beginning date of the Informal Resolution Period until that Notice is selected for a bellwether proceeding, withdrawn, or otherwise resolved.*" *See* Schuessler Decl. Ex. 4, Online Services Agreement § 11.6 (emphasis added). And as discussed above (at 7-9), Plaintiff's arguments that the tolling language is inadequate or itself unconscionable lack merit. Thus, under H&R Block's clause, consumers are not at risk of losing their legal claims.

In addition, H&R Block's pre-arbitration Notice of Dispute process goes further to promote settlement than the pre-arbitration notice in the Verizon agreement at issue in *MacClelland*. H&R Block's provision allows each claimant who submits a Notice of Dispute to insist on a personal settlement meeting (including with the participation of the claimant's counsel) with H&R Block's representatives (including H&R Block's counsel). Schuessler Decl. Ex. 4 § 11.2. Nothing in the mass arbitration procedures precludes a consumer from submitting a Notice of Dispute and demanding a settlement conference under this provision while other cases are being adjudicated through the bellwether arbitration process. *See id.* § 11.6 (providing only that "no other cases may be *filed* in arbitration" during the pendency of the bellwether process) (emphasis added).

Plaintiff also fails to compare the bellwether arbitration process to any real-world alternatives for resolving many individual cases in arbitration or court. Not even the largest arbitration providers can simultaneously arbitrate large numbers of cases. Under the AAA rules that would otherwise apply, the AAA assigns all cases to a small roster of arbitrators, who then adjudicate each claim individually. *See* AAA, Mass Arbitration Supplementary Rules, *supra*, at 8 (Jan. 15, 2024), https://bit.ly/49bKJmY. So the cases would be not be resolved all at once; instead, they too would be staged, just as they are under H&R Block's more orderly bellwether process.

H&R Block's orderly sequencing process is more efficient than mass individual claims in court, where it is routine for thousands of claims or more to be filed within an MDL proceeding, with only a handful ever making it to trial years later. *See generally* Manual for Complex

Litigation, Fourth § 20.132 (2004) ("Few cases are remanded for trial; most multidistrict litigation is settled in the transferee court."); U.S. Judicial Panel on Multidistrict Litigation, *Multidistrict Litigation Terminated Through September 30, 2021*, at 3, https://bit.ly/3feso28 (providing statistics showing that only a minimal percentage of cases filed in MDLs ever proceed to trial). Because arbitration is simpler and quicker than court—individual claims that cannot be settled are far more likely to resolved on the merits under H&R Block's provision than they would be if they were filed as individual court proceedings.

Plaintiff also ignores the virtue of an orderly bellwether process in promoting settlement. While bellwethers cannot *force* a settlement of the remaining claims in either court or arbitration, they are "designed to produce a verdict that would highlight the strengths and weaknesses of the parties' respective cases" and thereby "promote settlement." *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 995 (9th Cir. 2008); *see also, e.g.*, *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015) ("[a] bellwether trial is a test case that is typically used to facilitate settlement in similar cases"). As the California Court of Appeal recently observed, bellwether proceedings in court "winnow and sharpen not only discovery, but claims, defenses, calendaring decisions, motion practice, arguments, hearings or trial, adjudication, indeed every aspect of the litigation process—to the benefit of the parties, the court, and the public alike." *St. Paul Fire & Marine Ins. Co. v. AmerisourceBergen Corp.*, 80 Cal.App.5th 1, 16 (2022); *see also* Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2338 (2008) (noting that bellwether proceedings help all sides "understand the risks and costs associated with the litigation"). The use of bellwether procedures yields the same benefits in arbitration.

Plaintiff further argues that the mass arbitration procedures lack mutuality. Opp. 18. But he ignores that in the consumer context, mass arbitrations, just like class actions or mass torts in multi-district litigation proceedings, are by definition brought by consumers against a company and not the other way around. Moreover, the law is clear that companies can preclude class actions in arbitration agreements. *See Concepcion*, 563 U.S. 333. Even for class actions, Federal Rule of Civil Procedure 23(g) imposes asymmetrical restrictions on class action plaintiffs' counsel that do

13

not apply to defense counsel. Simply put, the fact that mass arbitration is a one-sided phenomenon does not and cannot mean that companies are unable to address it.

c. <em>The Challenged Terms Are Easily Severable.</em>

Finally, even if the pre-arbitration process and the mass arbitration procedures were somehow unconscionable (which they are not), the remedy would be to sever the provisions, not to deem the entire arbitration agreement unenforceable. California has a "'strong preference'" for severance. *Poublon*, 846 F.3d at 1272. That "strong preference" is codified in California Civil Code § 1599, which provides that "[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." Cal. Civ. Code § 1599. As the California Supreme Court has explained, Section 1599 "preserves and enforces any lawful portion of a parties' contract that *feasibly* may be severed." *Marathon Entm't, Inc. v. Blasi*, 174 P.3d 741, 750-51 (Cal. 2008) (emphasis added); *see also In re Marriage of Facter*, 212 Cal.App.4th 967, 987 (2013) (California law generally "takes a very liberal view of severability") (quotation marks and alterations omitted).

Both the pre-arbitration process and the mass arbitration procedures can easily be severed as "collateral to the main purpose of the contract," which is to resolve disputes by arbitration. *Poublon*, 846 F.3d at 1272; *accord*, *e.g.*, *Lang v. Skytap, Inc*., 347 F. Supp. 3d 420, 433 (N.D. Cal. 2018) (similar). Here, Plaintiff's arbitration agreement states that "if any portion of this Arbitration Agreement is deemed invalid or unenforceable, it will not invalidate the remaining portions of the Arbitration Agreement." Schuessler Decl. Ex. 4, Online Services Agreement § 11.7.

Unlike in *MacClelland*, where the court concluded that the arbitration clause as a whole was unenforceable because the contract contained at least five provisions that the court deemed unconscionable (*see* 609 F. Supp. 3d at 1045), the arbitration agreement in H&R Block's Online Services Agreement contains no such "systemic unconscionability" (*id.*). *See Poublon*, 846 F.3d at 1273-74 (severing two of the challenged provisions and enforcing the remainder of the arbitration agreement, noting that the severability clause in the agreement "makes clear that the

14

parties intended for any invalid portion of the agreement to be restricted").

Plaintiff's agreement to resolve his disputes by individual arbitration can and must be enforced independent of the provisions that he challenges.

## CONCLUSION

The Court should (1) compel Plaintiff to arbitrate his claims individually in accordance with his arbitration agreement; and (2) stay this action pending the outcome of arbitration.

Dated: April 4, 2024                    Respectfully Submitted,

**BERKOWITZ OLIVER**

By: /s/ Stacey R. Gilman
　　Stacey R. Gilman
　　Attorneys for HRB Digital, LLC and
　　HRB Tax Group, Inc.

**HOGE, FENTON, JONES & APPEL, INC.**

By: /s/ Alison P. Buchanan
　　Alison P. Buchanan
　　Attorneys for HRB Digital, LLC and
　　HRB Tax Group, Inc.

**MAYER BROWN LLP**

By: /s/ Archis A. Parasharami
　　Archis A. Parasharami
　　Attorneys for HRB Digital, LLC and
　　HRB Tax Group, Inc.

**CIVIL L.R. 5-1(H)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I, Alison P. Buchanan, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

DATED: April 4, 2024

**HOGE, FENTON, JONES & APPEL, INC.**

By: /s/ Alison P. Buchanan
Alison P. Buchanan
Attorneys for Defendants HRB Digital LLC
and HRB Tax Group, Inc.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this/these document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on April 4, 2024.

DATED: April 4, 2024

**HOGE, FENTON, JONES & APPEL, INC.**

By: /s/ Alison P. Buchanan
Alison P. Buchanan
Attorneys for Defendants HRB Digital LLC
and HRB Tax Group, Inc.