1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    JUSTIN HUNT,                              Case No.  23-cv-04953-PCP

8                  Plaintiff,

9          v.                                 **ORDER GRANTING H&R BLOCK'S
                                              MOTION TO COMPEL
10   META PLATFORMS, INC., et al.,            ARBITRATION**

11                 Defendants.                Re: Dkt. No. 86

12

13         In this putative consumer class action, plaintiff Justin Hunt alleges that his sensitive tax

14   return information was improperly transmitted to Facebook and Google when he used H&R

15   Block's online service to file his taxes. He brings this action against HRB Tax Group, Inc. and

16   HRB Digital LLC (collectively "H&R Block"), as well as Meta Platforms, Inc. and Google, LLC.

17   H&R Block has moved to compel arbitration under the terms of its Online Services Agreement.

18   H&R Block's motion is granted for the reasons that follow.

19   **I.      Background**

20         Mr. Hunt used H&R Block's online service to file his taxes from 2018 to 2023. Compl.,

21   Dkt. No. 36 ¶ 10. He alleges that H&R Block transmitted sensitive tax return information to Meta

22   and Google through the use of tracking tools installed on H&R Block's website. Compl. ¶¶ 85–87.

23         According to H&R Block, both new and returning users are required to agree to the H&R

24   Block Online Service Agreement each year they use the company's online tax filing service.

25   Schuessler Decl., Dkt. No. 88, at 2. The agreement includes an arbitration provision. *Id.*

26         According to H&R Block, when Mr. Hunt logged into his account in April 2023, he was

27   presented with a screen that required him to check a box next to the statement, "I agree to the

28   terms and conditions of the <u>Electronic Communications Consent</u> and the <u>Online Services</u>

United States District Court
Northern District of California

Agreement, which includes the requirement that any dispute be resolved through binding arbitration." Dkt. No. 88-2, at 2. The underlined terms (which appeared in green) were hyperlinks to the complete versions of the indicated documents. Schuessler Decl. at 3. According to H&R Block records, Mr. Hunt completed this process and checked the box indicating his agreement to the Online Services Agreement on April 5, 2023. *Id.* at 4. Mr. Hunt does not dispute that he accepted the Online Service Agreement in this manner. *See* Opposition, Dkt. No. 105, at 12.

The version of the H&R Block Online Services Agreement that Mr. Hunt agreed to includes a section entitled "11. Arbitration If A Dispute Arises ('Arbitration Agreement')." Agreement, Dkt. No. 88-4, at 16. The first paragraph of this section provides:

> You and the H&R Block Parties agree that all disputes and claims between you and the H&R Block Parties shall be resolved through binding individual arbitration unless you opt out of this Arbitration Agreement using the process explained below.… All issues are for the arbitrator to decide, except that issues relating to the arbitrability of disputes and the validity, enforceability, and scope of this Arbitration Agreement … shall be decided by a court and not an arbitrator.

*Id.* Instructions for opting out of the arbitration agreement appear in bold text in a box directly following the first paragraph of the arbitration agreement. *Id.* The agreement also requires parties to pursue an informal resolution process before commencing arbitration, and specifies that "[a]rbitration shall be conducted by the American Arbitration Association ('AAA') pursuant to its Consumer Arbitration Rules…, as modified by this Arbitration Agreement." *Id.* at 16–17.

Mr. Hunt filed his first complaint in this case in September 2023. He filed the operative second amended complaint in December 2023, alleging claims against H&R Block, Meta, and Google for violating the Racketeer Influenced and Corrupt Organizations Act and the Internal Revenue Code. H&R Block then filed a motion to compel arbitration of Mr. Hunt's claims.

## II.     Legal Standard

The Federal Arbitration Act provides that a "written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As this

United States District Court
Northern District of California

language makes clear, "an arbitration agreement is a contract like any other." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). And like other contracts, arbitration agreements are subject to "generally applicable contract defenses" like "fraud, duress, or unconscionability." *Lim v. TForce Logs., LLC*, 8 F.4th 992, 999 (9th Cir. 2021). There is one way arbitration provisions in a contract are distinct, however: "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). In other words, notwithstanding state law on severability, an arbitration provision can be valid and enforceable even if other parts of the contract it is in are not.

A purported arbitration agreement presents a few "gateway" issues. The first is whether an agreement to arbitrate was actually formed. *See Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 634–35 (9th Cir. 2021). Formation challenges are decided pursuant to state law. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). The second is whether that agreement is "valid," *Bielski*, 87 F.4th at 1009, in other words, whether there are any defenses to the agreement's enforcement. The third is "whether the agreement encompasses the dispute at issue." *Id.* These gateway issues must be resolved by the court unless the parties have validly agreed to delegate those issues to the arbitrator.[1]

### III.    Analysis

Mr. Hunt does not dispute that he entered an arbitration agreement with H&R Block by accepting the Online Services Agreement. Opposition at 12. He argues that the agreement is unenforceable, however, because it was induced by fraud and because it is unconscionable. He also argues that the agreement does not cover his claims. None of these arguments has merit.

### A.    The Arbitration Agreement Is Enforceable.

#### 1.    Mr. Hunt Has Not Established the Agreement Was Induced by Fraud.

Mr. Hunt argues that the arbitration agreement cannot be enforced because it was induced by fraud. He premises his argument on Section 11.2(B) of the arbitration agreement, which sets

---

[1] H&R Block's Online Services Agreement does not include a delegation clause. To the contrary, it provides that questions regarding the "arbitrability of disputes" and the "scope" of the agreement are to be decided by a court. Dkt. No. 88-4, at 16.

forth the "Informal Resolution Period" required before commencing arbitration and reads, in part: "Any counsel representing you or us [in an Informal Settlement Conference] may also participate; however, if you have retained counsel, a signed statement is required by law to authorize the H&R Block Parties to disclose your confidential tax and account records to your counsel." Agreement at 17. Mr. Hunt argues that this statement "induced Mr. Hunt to reasonably believe that H&R Block would comply with all legal requirements and applicable laws governing the disclosure of his [tax return information] to third parties, such as an attorney, and would not disclose such information without his express written consent." Opposition at 13. Mr. Hunt asserts that had he "been made aware that H&R Block did not intend to comply with applicable law, as referenced within the arbitration agreement, and would instead be sharing his highly sensitive [tax return] data with Meta and Google, Mr. Hunt would not have used H&R Block." Opposition at 14. He concludes on this basis that his "assent to the arbitration agreement and OSA is therefore negated by … fraud." *Id.*

"Under the FAA, courts may resolve challenges directed specifically to the validity of the arbitration provision itself, but if there are no arbitration-specific challenges, the court must send to the arbitrator any other challenges, including challenges to the validity of the contract as a whole. Specifically, in the presence of an otherwise-valid arbitration provision, a challenge that the entire agreement was fraudulently induced must be sent to the arbitrator." *Rossi v. Purvis*, ––– F. Supp. 3d ––––, 2024 WL 319679, at *5 (N.D. Cal. 2024) (cleaned up) (quoting *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022)).

Mr. Hunt's fraud theory challenges the entire Online Services Agreement rather than solely its arbitration provision. It must therefore be decided by the arbitrator rather than the Court. Although the language from the Online Services Agreement that Mr. Hunt asserts fraudulently induced him to enter the agreement appears in the arbitration provision, his claim is that, if he had understood H&R Block's true practices with his tax return information, he would not have used H&R Block's services *at all*. He does *not* assert that a fuller understanding of H&R Block's intentions would have caused him to opt out of the arbitration provision, or that he otherwise agreed *to that provision* solely due to the purportedly misleading language regarding H&R

United States District Court
Northern District of California

Block's data practices.

Because Mr. Hunt's fraudulent inducement challenge is to the validity of the contract as a whole rather than to the arbitration provision, it must be addressed by the arbitrator. *See Caremark*, 43 F.4th at 1029. Mr. Hunt cannot rely on that challenge to defeat H&R Block's motion to compel.

### 2.   Mr. Hunt Has Not Established That The Agreement Is Unconscionable.

Mr. Hunt also argues that the arbitration provision is unconscionable and therefore unenforceable. Under California law (which governs whether the agreement is unconscionable), Mr. Hunt must establish both procedural and substantive unconscionability to render the arbitration agreement unenforceable:

> Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be "so one-sided as to shock the conscience." ...
>
> Both procedural unconscionability and substantive unconscionability must be shown, but they need not be present in the same degree and are evaluated on a sliding scale. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246–47 (2012) (cleaned up).

Mr. Hunt's unconscionability challenge fails because the Online Services Agreement is not procedurally unconscionable. Mr. Hunt's only argument on procedural unconscionability is that the agreement was a contract of adhesion. Opposition at 15. But Mr. Hunt does not contest that its arbitration provision included a clear opt-out provision. Nor does he assert that he ever attempted to opt out. Because the agreement included a clear opt-out provision, it cannot be deemed procedurally unconscionable solely on grounds of adhesiveness. *See Mohamed v. Uber Techs.,*

1    *Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016). Because Mr. Hunt has offered no other reason why the

2    arbitration agreement is procedurally unconscionable, the Court finds no procedural

3    unconscionability. And because a contract can be invalidated under California law only where

4    there is both procedural and substantive unconscionability, the arbitration agreement is

5    enforceable whether or not its terms are substantively unconscionable.

6                                  *        *        *

7           In sum, Mr. Hunt has not shown that the arbitration agreement he entered into with H&R

8    Block was induced by fraud or unconscionable. He is therefore bound by its terms.

9           **B.      The Arbitration Agreement Covers Mr. Hunt's Claims.**

10          Mr. Hunt separately argues that even if the arbitration agreement is enforceable, his claims

11   here do not fall within its scope. The section of the Online Services Agreement that includes the

12   arbitration provision states that "all disputes and claims between you and the H&R Block Parties

13   shall be resolved through binding individual arbitration." Agreement at 16. Although this broad

14   language clearly covers Mr. Hunt's claims against H&R Block in this action, Mr. Hunt suggests

15   that this language is limited by narrower language in Section 1.1 of the Online Services

16   Agreement stating: "This Agreement governs your use of Products and Services … provided by

17   H&R Block…." Opposition at 7–8. Mr. Hunt argues that this language means that he only agreed

18   to arbitrate claims or disputes "arising out of the use of H&R Block's products and services," and

19   that his claims in this case do not satisfy this requirement because the complaint "centers upon the

20   enterprises [sic] use of Meta's and Google's products and services." Opposition at 8. In Mr.

21   Hunt's view, his complaint is about H&R Block's use of Meta and Google tracking tools, not Mr.

22   Hunt's use of H&R Block services, and thus falls outside the scope of the arbitration provision.

23          The Court is skeptical that Section 1.1 limits the clear language of Section 11 in the

24   manner Mr. Hunt proposes. But even if it does, Mr. Hunt's argument would fail because his

25   claims all relate to his use of H&R Block's products and services. The tax return information that

26   was allegedly transmitted to Google and Meta by H&R Block was information that Mr. Hunt

27   provided to H&R Block while using its products and services, and the transmission of that

28   information occurred in the course of his use of those products and services as part of Google and

United States District Court
Northern District of California

1    Meta's tracking of that use. *See, e.g.*, Compl. ¶ 252. (alleging that, "[a]t all relevant times, H&R

2    Block's online tax preparation software and mobile platforms contained Meta Pixels and Google

3    Analytics that disclosed, disseminated, transmitted, and/or released Plaintiff's … [tax return

4    information] to Meta and Google"). These claims closely relate to Mr. Hunt's use of H&R Block

5    services, even if they also arise from H&R Block's use of third-party tools in providing those

6    services.

7         Mr. Hunt's claims in this action are therefore covered by his arbitration agreement with

8    H&R Block, and Mr. Hunt must pursue those claims in arbitration rather than in court.

9    **IV.    Conclusion**

10        For the foregoing reasons, H&R Block's motion to compel arbitration is granted. Mr. Hunt

11   and the H&R Block parties are ordered to proceed with arbitration in the manner provided in their

12   agreement. Mr. Hunt's claims against H&R Block shall be stayed until arbitration is complete.

13

14        **IT IS SO ORDERED.**

15   Dated: April 11, 2024

16

17        _____

18        P. Casey Pitts
          United States District Judge

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California