UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN HUNT,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>META PLATFORMS, INC., et al.,<br><br>　　　　　Defendants. | Case No. 23-cv-04953-PCP<br><br>**ORDER GRANTING MOTIONS TO COMPEL ARBITRATION**<br><br>Re: Dkt. Nos. 93, 102 |

In this putative consumer class action, plaintiff Justin Hunt alleges that his sensitive tax return information was improperly transmitted to Google and Meta when he used H&R Block's online service to file his taxes. He brings this action against HRB Tax Group, Inc. and HRB Digital LLC (collectively "H&R Block"), as well as Meta Platforms, Inc. and Google, LLC.

The Court previously concluded that Mr. Hunt's claims against H&R Block were covered by the arbitration provision in the H&R Block Online Services Agreement to which Mr. Hunt assented, and on that basis granted H&R Block's motion to compel arbitration of those claims. *See* Order, Dkt. No. 122, ––– F.Supp.3d –––, 2024 WL 1561469 (N.D. Cal. 2024).

Mr. Hunt has not entered into an arbitration agreement with either Google or Meta. Nonetheless, both Google and Meta have moved to compel arbitration under Mr. Hunt's arbitration agreement with H&R Block. They argue that, because of this agreement, Mr. Hunt is equitably estopped from litigating his claims against Google and Meta in court. For the reasons set forth below, the motions by Google and Meta to compel arbitration are granted and this action is stayed pending arbitration.

## I. Background

Mr. Hunt used H&R Block's online service to file his taxes from 2018 to 2023. Compl., Dkt. No. 36 ¶ 10. He alleges that H&R Block transmitted sensitive tax return information to Meta and Google through tracking tools installed on H&R Block's website. Compl. ¶¶ 85–87.

In order to use H&R Block's online services Mr. Hunt had to agree to its Online Services Agreement. Compl. ¶ 102. This agreement includes an arbitration provision stating that Mr. Hunt and H&R Block "agree that all disputes and claims between [them] shall be resolved through binding individual arbitration." Dkt. No. 88-4, at 16. Mr. Hunt does not dispute that he assented to this agreement, nor does he claim to have opted out (as the agreement allows). Mr. Hunt also does not assert here that the arbitration provision itself is not enforceable—a challenge the Court rejected in granting H&R Block's motion to compel arbitration. Neither Google nor Meta claims to have entered into any other arbitration agreement directly with Mr. Hunt.

Mr. Hunt filed the operative complaint in December 2023. He is pursuing claims against H&R Block, Meta, and Google for allegedly violating the Racketeer Influenced and Corrupt Organizations (RICO) Act.[1] All three defendants subsequently moved to compel arbitration of Mr. Hunt's claims. The Court granted H&R Block's motion. Dkt. No. 122, 2024 WL 1561469.

## II. Legal Standard

The Federal Arbitration Act (FAA) provides that a "written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because "arbitration agreements are simply contracts," the "first principle" in FAA cases "is that arbitration is strictly a matter of consent." *Coinbase, Inc. v. Suski*, 602 U.S. ——, 2024 WL 2333424, at *3 (2024) (cleaned up). "Generally, parties who have not assented to an arbitration agreement cannot be compelled to arbitrate under its terms." *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1094 (9th Cir. 2020). But "a litigant who is not a party to an arbitration agreement may

---

[1] The complaint also included a claim under the Internal Revenue Code, 26 U.S.C. §§ 6103, 7431. Mr. Hunt has conceded that he is no longer pursing this claim.

invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Herrera v. Cathay Pac. Airways Ltd.*, 94 F.4th 1083, 1087 (9th Cir. 2024).

### III. Analysis

Both Google and Meta ask the Court to compel Mr. Hunt to arbitrate his claims against them on the basis of his arbitration agreement with H&R Block. Mr. Hunt does not dispute that the assented to this agreement. But the agreement on its face only covers "disputes and claims" between Mr. Hunt and H&R Block. Thus, nonsignatories Google and Meta can only invoke this provision to require arbitration of the claims against them if authorized to do so by the relevant state law. *See Herrera*, 94 F.4th at 1087.

The parties do not dispute that California law governs. Under California law, a party to an arbitration agreement can be equitably estopped from bringing a claim in court against a defendant who was not a party to the arbitration agreement in two circumstances. The first is "when the claims against the nonsignatory are intimately founded in and intertwined with the underlying contract." *Herrera*, 94 F.4th at 1088 (cleaned up). The second is "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Id.* at 1088 n.5 (cleaned up). The first circumstance is clearly present here, and the second circumstance is arguably present.

With respect to the first circumstance, Mr. Hunt's claims against Google and Meta by their own terms are closely intertwined with his agreement with H&R Block. Mr. Hunt's complaint alleges that H&R Block, Google, and Meta engaged in a "pattern of racketeering activity"—one element of a RICO claim. *See* 18 U.S.C. § 1963(c).  He specifically alleges that this "pattern of racketeering activity" included "acts indictable as wire and/or mail fraud under 18 U.S.C. § 1343." Compl. ¶ 227. And the alleged acts constituting mail or wire fraud include, among others, "fraudulent communications … regarding H&R Block's privacy and data security policy"; "fraudulent[] misrepresent[ations] … that H&R Block had the authority to transmit [tax return information] to third parties" under its privacy and data security policy; and "fraudulent[]

represent[ations]" in the privacy and data security policy "that H&R Block would not engage in the sharing of … [tax return information]," Compl. ¶¶ 171–73.

Because H&R Block's "privacy and data security policy" is set forth in part in its Online Services Agreement, Mr. Hunt's mail and wire fraud claims against Google and Meta depend on that agreement and whether it was fraudulent, as Mr. Hunt alleges.[2] While not all of Mr. Hunt's allegations involve H&R Block or its agreements, the Ninth Circuit has held that "California law does not require that every allegation in the complaint be intertwined with the contract containing the arbitration clause for equitable estoppel to apply." *Herrera*, 94 F.4th at 1091.

*Herrera* is instructive. In that case, plaintiffs who had booked airline tickets through a third-party booking website brought claims against the airline but not the booking site. The plaintiffs had entered into an arbitration agreement with the booking site but not the airline. The Ninth Circuit applied California law to conclude that the claims against the airline were "intimately founded in and intertwined with" the booking site's terms and conditions (which included the arbitration agreement) because those claims ultimately depended on whether the booking site had complied with its contractual obligations under an agreement that included the relevant arbitration provision. 94 F.4th at 1090.

To be certain, the claims against the nonsignatory airline in *Herrera* required considering whether the signatory booking site had breached its agreement with the plaintiffs, whereas Mr. Hunt's claims involve fraud purportedly resulting from the terms of his agreement with H&R Block. But as the Ninth Circuit explained in *Herrera*, the question under California law is whether the claims "are in *any way* founded in or bound up with the terms." 94 F.4th at 1090–91 (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 230 (2009)) (emphasis Ninth Circuit's). Mr.

---

[2] Mr. Hunt argues in opposing the motions to compel arbitration that the Privacy Notice and Online Services Agreement are "entirely separate document[s]." Dkt. No. 121, at 13. But his argument is contradicted by his own complaint, which recognizes that the documents are closely related and defines the term "privacy policy" to refer to *both* the Online Services Agreement and the Privacy Notice it incorporates. *See* Compl. ¶ 102. Mr. Hunt's fraud allegations all refer to H&R Block's "privacy and data security policy," Compl. ¶ 171, and he defines the H&R Block "license agreement and privacy policy" as including "H&R Block's Electronic Communications Consent, its Online Services Agreement, and its H&R Block Privacy Notice." Compl. ¶ 102. The arbitration provision is included within the Online Services Agreement, which explicitly incorporates the Privacy Notice. *See* Dkt. No. 88-4, at 5.

1    Hunt's RICO claims formally arise from a statute rather than from his contract with H&R Block,
2    but because the claims allege fraud arising from the H&R Block agreements as one of the
3    elements of his RICO claims, those claims are intimately intertwined with the H&R Block
4    agreements (including the incorporated privacy notice). Under *Herrera*, this close connection
5    requires that Mr. Hunt resolve his claims against Google and Meta in arbitration.

6    With respect to the second circumstance that might establish equitable estoppel here, the
7    parties agree that Mr. Hunt's complaint alleges interdependent misconduct by H&R Block,
8    Google, and Meta. Mr. Hunt alleges that H&R Block formed ongoing enterprises with Google and
9    Meta to engage in a pattern of racketeering activity that included fraudulent misrepresentations
10   about the privacy of users' tax return information. Compl. ¶¶ 219–27. This alleged misconduct
11   could not be more interdependent.

12   The harder question is whether this concerted misconduct is closely connected to Mr.
13   Hunt's agreement with H&R Block. When a party seeks to apply equitable estoppel on the basis of
14   concerted misconduct, "allegations of substantially interdependent and concerted misconduct by
15   signatories and nonsignatories, standing alone, are not enough: the allegations … must be founded
16   in or intimately connected with the obligations of the underlying agreement." *Kramer v. Toyota*
17   *Motor Corp.*, 705 F.3d 1122, 1133 (9th Cir. 2013) (quoting *Goldman*, 173 Cal. App. 4th at 219).
18   The alleged concerted misconduct here is undoubtedly connected to Mr. Hunt's underlying
19   agreement with H&R Block in some sense because H&R Block is the only defendant with whom
20   Mr. Hunt had a direct relationship and that relationship was entirely governed by H&R Block's
21   Online Services Agreement (which contains an integration clause, Dkt. No. 88-4, at 20), including
22   the incorporated Privacy Notice. *See* Compl. ¶¶ 102, 198–212. Given that Mr. Hunt *also* alleges
23   that this agreement either misrepresented or omitted important details about how Mr. Hunt's tax
24   return information would or would not be shared with companies like Google and Meta, his
25   allegations against Google and Meta may be closely enough connected to his agreement with
26   H&R Block to establish the second circumstance justifying equitable estoppel. The Court need not
27   reach a final decision on this issue, however, because either basis for equitable estoppel is
28   sufficient on its own to require arbitration of Mr. Hunt's claims against Google and Meta. Because

5

the first circumstance has been established, Mr. Hunt is equitably estopped under California law from pursing his claims against Google and Meta in court rather than arbitration. Google and Meta's motions to compel arbitration are therefore granted.

## IV. Conclusion

For the reasons set forth above, the motions by Google and Meta to compel arbitration are granted. This case shall be stayed until any arbitration of Mr. Hunt's claims against those defendants has concluded. 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. —— (2024). Defendants shall notify the Court within 14 days after any arbitration is completed and shall until that time submit a one-page status report by the first day of every September and March.

Because Mr. Hunt must pursue his claims against Google and Meta in arbitration, the pending motions by Google and Meta to dismiss his claims in this action are denied without prejudice.

**IT IS SO ORDERED.**

Dated: May 24, 2024

P. Casey Pitts
United States District Judge